IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROB HANDY and BRIAN T. MCCALL,　　　　　Case No. 6:12-cv-01548-AA
　　　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER
　　　　　　Plaintiffs,

　　v.

LANE COUNTY, LIANE RICHARDSON,
JAY BOZIEVICH, SIDNEY LEIKEN,
and FAYE STEWART,

　　　　　　Defendants.
_____

Marianne Dugan
Brian Michaels
Attorneys At Law
259 E. 5th Ave., Suites 200-D & 300-D
Eugene, Oregon 97401
　　Attorneys for plaintiffs

Stephen E. Dingle
Attorney at Law
125 E. 8th Ave.
Eugene, Oregon 97401
　　Attorney for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendants Lane County ("County"), Liane Richardson, Jay Bozievich, Sidney Leiken, and Faye Stewart move to dismiss plaintiffs Rob Handy's and Brian McCall's claims pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion is granted and this case is dismissed.

BACKGROUND

Prior to the initiation of this lawsuit, plaintiff Handy, and defendants Bozievich, Leiken, and Stewart served as duly elected members of the County Board of Commissioners ("Board"). The Board is a five-member governing body[1] duly chartered and elected under Oregon Law to make decisions on behalf of the County. In addition, Richardson worked as the County Administrator and, as such, was responsible for implementing County-wide policy approved by the Board. Plaintiff McCall is a citizen living within Handy's district and was one of Handy's constituents at all relevant times.

Handy ran for reelection in a primary race that was to be decided on May 15, 2012. During his term of office, Handy had numerous disagreements with Richardson regarding his opinions and personal positions. Some of the disagreements were publicly debated, while others were of a private nature. Handy also had disagreements with Bozievich, Leiken, and Stewart regarding his statements and expressive activities.

On May 2, 2012, a complaint letter ("Letter")[2] was sent to

---

[1] Pete Sorenson is the fifth Board member and not a party to this lawsuit.

[2] Handy does not allege the author of the letter.

Page 2 - OPINION AND ORDER

Richardson, alleging that Handy violated certain campaign laws. Thereafter, Richardson received a public records request regarding the Letter from two media outlets that consistently made negative statements about Handy. Bozievich, Leiken, and Stewart conferred about the Letter and decided an "emergency" meeting was necessary to discuss whether to release it. That same day, the Oregon Department of Justice ("DOJ") began investigating the allegations in the Letter; in response, Handy submitted a rebuttal letter, in which he denied violating any campaign laws.

On May 3, 2012, at 9:00am, defendants and County counsel held a meeting. Neither Handy, Sorenson, nor the general public were informed about the meeting until 7:40am on May 3, 2012. The Board subsequently voted to release the Letter, thereby electing not to apply the public records act exemption for criminal investigations. The release of the Letter to the media led to widespread coverage of the allegations therein.[3] Richardson then changed the locks to Handy's office and adjusted Handy's access card settings so that he could only enter the County building during business hours. Richardson also blocked Handy's access to his office computer and archived e-mails, but provided Handy with a public computer to use during business hours.[4]

On May 7, 2012, Richardson informed Handy via text message that, "until we get [permission] from the various entities to

---

[3] The release date of the Letter is not included in Handy's complaint; nonetheless, it was released sometime before the primary election was decided on May 15, 2012.

[4] Handy failed to provide the date on which he was given access to the public computer. Based on the facts alleged in the complaint, the Court infers that the computer was made available to Handy sometime between May 3, 2012, and May 7, 2012.

Page 3 - OPINION AND ORDER

release the office and computer, we will need to keep your access to Monday-Friday.  The space set aside for your new computer is only open during normal work hours." Compl. ¶ 23.  Richardson also informed Handy, County counsel, Leiken, and Bozievich via e-mail that, "[o]nce we have heard from all of the various entities who are looking into the allegations that they no longer need access to your office and computer, I will take this matter back to the [Board] for guidance." Id. at ¶ 24.

On May 8, 2012, the DOJ advised Richardson and County counsel via e-mail that the "DOJ has not asked that Handy be excluded from, or 'locked out of' his office, [and the] DOJ takes no position on the County excluding [Handy] from, or granting him access to, any County space; including his office." Id. at ¶ 25.

On May 15, 2012, Handy lost the primary election.  On May 23, 2012, Handy filed a public records lawsuit in state court against the County.  On June 27, 2012, the DOJ informed Handy of its May 8, 2012 e-mail.  Handy was not aware of the e-mail prior to that date and believed the pending DOJ investigation was the reason he was locked out of his office.

On June 29, 2012, Handy filed a second lawsuit in state court, alleging that the County, Leiken, Bozievich, and Stewart violated the Oregon Public Meetings Act by holding the May 3, 2012 "emergency" meeting.  Thereafter, County representatives informed Handy that he was locked out of his office due to his pending lawsuits against the County.

Despite his repeated requests for access to his office, Handy remained locked out until July 30, 2012.  That same day, he was given a key to his old office, but still could not retrieve his

Page 4 - OPINION AND ORDER

archived emails. In addition, Handy's access card to the building remained set for business hours only, rather than the usual 24-hour access.

On August 27, 2012, plaintiffs filed a complaint in this Court asserting seven claims arising out of defendants' alleged violations of public meetings laws and their failure to provide Handy with access to his office, computer, archived e-mails, and the County building. Subsequently, defendants moved to dismiss plaintiffs' complaint.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed. R. Civ. P. 12(b)(1). Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). The party who seeks to invoke the subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In such instances, the court may hear evidence regarding subject-matter jurisdiction and resolve factual disputes where necessary; however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." Kingman Reef Atoll Invs., LLC v. United States, 541 F.3d 1189, 1195 (9th Cir. 2008).

Similarly, where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). For the purposes of the motion to

Page 5 - OPINION AND ORDER

dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing Twombly, 550 U.S. at 556). However, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Id. at 681. Rather, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Bacca, 652 F.3d 1202, 1216, (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

## DISCUSSION

Defendants assert that McCall's claims should be dismissed because this Court lacks subject-matter jurisdiction. In addition, defendants assert that plaintiffs fail to state plausible claims for relief.

## I. McCall

Defendants contend that McCall lacks standing because his asserted claims do not establish a concrete personalized harm: "[McCall's] alleged harm . . . is a harm that is shared by all of Handy's constituents." Defs.' Memo. in Supp. of Mot. Dismiss 8-9. Defendants also argue that "[n]either McCall nor any other constituent of Handy was singled out for disproportionate treatment

by the [defendants]." Id. at 9. Accordingly, defendants assert that McCall's claims constitute a "generalized grievance". Id. at 8-9. In addition, defendants assert that McCall "failed to plead sufficient facts to support a plausible claim for relief". Id. at 10-11.

McCall asserts that defendants' conduct against Handy deprived him of his First and Fourteenth Amendment rights to a representative government and equal protection under the law, respectively. Compl. ¶¶ 48-50, 53-55. Specifically, McCall argues that "[i]t is not necessary for all plaintiffs to have standing, as long as at least one plaintiff has standing." Pls.' Resp. to Mot. Dismiss 14 (citing Massachusetts v. EPA, 549 U.S. 497, 518 (2007); and Rumsfeld v. Forum for Acad. & Inst. Rights, Inc., 547 U.S. 47, 52 n. 2 (2006)). McCall further argues that "although a lawmaker himself cannot sue for being denied the right to vote on an issue[,] such limitations could give rise to claims by his constituents, whose rights he holds in trust." Id. at 15 (citing Nev. Comm'n on Ethics v. Carrigan, 131 S.Ct. 2343 (2011); and Raines v. Byrd, 521 U.S. 811, 821 (1997) (emphasis in original)). Lastly, McCall asserts that he sufficiently plead his claims for relief. Id. at 16 (citing Miller v. Johnson, 515 U.S. 900 (1995)).

A. Article III Standing

The standing jurisprudence of federal courts "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, [and] prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004) (citations and internal quotations omitted). The

Page 7 - OPINION AND ORDER

"irreducible constitutional minimum of standing" requires three elements: 1) the plaintiff must have suffered an "injury in fact"; 2) the injury must be "fairly traceable to the challenged action of the defendant"; and 3) "it must be likely . . . that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61 (citations and internal quotations omitted).

The Supreme Court has consistently defined an "injury in fact as an invasion of a legally protected interest which is a) concrete and particularized . . . and b) actual or imminent, not conjectural or hypothetical." Id. at 560 (quotations and citations omitted); Warth v. Seldin, 422 U.S. 490, 508 (1975). For an injury to be concrete and particularized, the plaintiff must show his alleged harm is particular to himself, as opposed to an injury shared equally with his fellow citizens. See Lance v. Coffman, 549 U.S. 437, 440 (2007); see also Lujan, 504 U.S. at 561 n. 1 (the injury must directly "affect the plaintiff in a personal and individual way").

Here, McCall correctly emphasizes the unique relationship between the rights of voters and the rights of elected officials. See Burdick v. Takushi, 504 U.S. 428, 438 (1992) (citing Bullock v. Carter, 405 U.S. 134, 143 (1972)). Further, an assertion that his right to vote was impeded may confer Article III standing. See, e.g., Baker v. Carr, 369 U.S. 186, 206-208 (1962) (plaintiffs had standing to allege claim premised on voter dilution). The cases that McCall relies on, however, undermine his contention that he has Article III standing. Both Carrigan and Raines stand for the proposition that, in order to have standing, a plaintiff must present a concrete and particularized injury to his protected right

Page 8 - OPINION AND ORDER

to vote, rather than a general allegation that a representative's right to his legislative role has been impeded. See Carrigan, 131 S.Ct. at 2350 (city council member did not have standing to challenge his recusal because a legislator's vote is not protected speech under the First Amendment); Raines, 521 U.S. at 812 (members of Congress did not have standing to challenge legislation because they did not actually vote on a specific bill).

Further, the basis of McCall's alleged injury flows from the fact that Handy no longer represents his political and/or social interests. McCall, however, does not contend that defendants' alleged conduct inhibited his individual right to vote. Because McCall does not allege that he was unable to vote for Handy in the primary election, it is unclear how the alleged injury is fairly traceable to defendants' actions. As such, McCall has only asserted an injury to his general interest in Handy's reelection. The "injury in fact" test requires much more than an injury to a cognizable interest; rather, "[i]t requires that the party seeking review be himself among the injured." Lujan, 504 U.S. at 563. For this reason, defendants' motion to dismiss is granted as to McCall's claims.

B. Prudential Standing

Even if McCall was able to meet the "irreducible constitutional minimum of standing" mandated by Article III, his claims would nonetheless be dismissed due to prudential considerations. The "prudential component of standing precludes the exercise of [subject-matter jurisdiction] even where the Constitution's 'irreducible minimum' requirements have been met." Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1108 (9th Cir. 2003).

Page 9 - OPINION AND ORDER

Thus, due to prudential limitations, a court may refrain from "adjudicating abstract questions of wide public significance which amount to generalized grievances pervasively shared and most appropriately addressed in the representative branches." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 474-75 (1982).

McCall does not respond to defendants' prudential argument. See Pls.' Resp. to Mot. Dismiss 14-15. Nevertheless, the Court finds that McCall's disagreement with the result of the May 2012 primary race presents an abstract claim that is better resolved through the political process. See Jewel v. Nat'l Sec. Agency, 673 F.3d 902, 909 (9th Cir. 2011) ("where large numbers of Americans suffer alike, the political process, rather than the judiciary process, may provide the more appropriate remedy for a widely shared grievance"). Here, McCall's interest in Handy's reelection was frustrated by the results of the primary race; however, this alleged injury is equally shared by all of Handy's constituents. Therefore, McCall has a no more particularized stake in defendants' actions than any other voter asserting a generalized grievance. As a result, McCall also lacks prudential standing to bring his claims.

    C.  Failure to State a Claim

Because McCall lacks Article III and prudential standing, the Court declines to analyze whether his claims also fail at the pleadings level. Accordingly, defendants' motion to dismiss McCall's claims is granted.

II.  Handy

To state a claim under 42 U.S.C. § 1983, the plaintiff must

Page 10 - OPINION AND ORDER

allege that: 1) the conduct complained of deprived him of an existing federal constitutional or statutory right; and 2) the conduct was committed by a person acting under color of state law. See L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992), cert. denied, 508 U.S. 951 (1993). Handy asserts three violations of 42 U.S.C. § 1983: 1) First Amendment retaliation against the individually named defendants; 2) deprivation of his right to Due Process under the Fourteenth Amendment against the individually named defendants; and 3) deprivation of his "civil rights" against the County. See Compl. ¶¶ 39-45, 57-68. In addition, Handy alleges two state law claims: 1) violations of the Oregon Public Meetings Act; and 2) injunctive relief arising out of violations of the Oregon Public Meetings Act. Id. at ¶¶ 69-94.

Defendants contend that Handy's claims should be dismissed because he failed to plead facts establishing that his "political speech was protected" under the First Amendment and that "[d]efendants' alleged illegal conduct was made with the purpose of retaliating against [his] past opinions, statements, or expressive activities regarding matters of general public interest." Defs.' Memo. in Supp. of Mot. Dismiss 14-18. Defendants further assert that Handy's claim should be dismissed because "[n]othing in Handy's complaint supports that he has a constitutionally protected right to be reelected to the board, a liberty interest in his position, or that [defendants] prevented him from running for reelection or participating in his position." Id. at 22. Lastly, defendants contend that Handy fails to provide "facts that suggest [the County] acted in an illegal manner." Id. at 22-23.

Conversely, Handy contends that the "First Amendment has its

Page 11 - OPINION AND ORDER

fullest and most urgent application to speech uttered during a campaign for political office." Pls.' Resp. to Mot. Dismiss 10 (citing Eu v. S.F. Cnty Democratic Cent. Comm., 489 U.S. 214, 223 (1989)). He argues that an elected official may bring a First Amendment retaliation claim when "protected speech [is punished] by governmental action that is regulatory, proscriptive, or compulsory in nature." Id. at 11. In addition, Handy argues that "[c]ourts allow Fourteenth Amendment Due Process claims when a plaintiff can show the government deprived him the freedom to engage in any of the common occupations of life without due process of the law." Id. at 13 (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 572-73 (1971)). Handy contends that the "basis of [his] claim is [the] deprivation of a liberty interest, which the Ninth Circuit has defined as a right or status [recognized] by state law." Id. (emphasis in original).

A. First Amendment Retaliation Against the Individually Named Defendants

"Political speech lies at the core of First Amendment protections." Kaplan v. Cnty. of L.A., 894 F.2d 1076, 1079 (9th Cir. 1990). The Ninth Circuit, however, has limited such protections to "speech on matters of public concern [by] private citizens and government employees speaking as private citizens." Blair v. Bethel Sch. Dist., 608 F.3d 540, 545 n. 3 (9th Cir. 2010). Nevertheless, an elected official may bring a First Amendment retaliation claim for the suppression of speech if governmental activity has punished, or threatened to punish, the official's protected speech by a governmental action that is "regulatory, proscriptive, or compulsory in nature." Laird v. Tatum, 408 U.S.

Page 12 - OPINION AND ORDER

1, 11, (1972); see also Hartman v. Moore, 547 U.S. 250, 256 (2006) ("[t]he First Amendment forbids government officials from retaliating against individuals for speaking out"). The resulting consequence may be an "indirect discouragement," rather than a direct punishment, such as "imprisonment, fines, injunctions or taxes." Am. Commc'n Ass'n C.I.O. v Douds, 339 U.S. 382, 402 (1950).

Thus, to recover under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment, the plaintiff must establish that: "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." Blair, 608 F.3d at 543.

Here, Handy is correct that elected officials are to be given "the widest latitude to express their views on issues of policy." Pls.' Resp. to Mot. Dismiss 12 (citing Bond v. Floyd, 385 U.S. 116, 135-137 (1966)). Unlike the plaintiff in Bond, however, Handy does not cite to any political views, specific debates, or particular disagreements he participated in that support his allegations. As a result, Handy fails to articulate how his prior opinions, statements, and expressive activities constitute protected speech. Even if these activities are considered protected speech, Handy does not provide a single fact that establishes a nexus between his prior speech and defendants' actions of limiting him access to his office, archived e-mails, or the County building.

Moreover, Handy does not cite to any facts that suggest

Page 13 - OPINION AND ORDER

defendants' conduct stifled his ability to further exercise his speech rights.  See Blair, 608 F.3d at 544; see also Lacey v. Maricopa Cnty., 693 F.3d 896, 916-17 (9th Cir. 2012).  Rather, Handy was given access to a public computer and could enter the County building at any time during business hours. Compl. ¶¶ 35, 37.  Nowhere does Handy allege that he was prevented from voicing his opinions, making statements, or engaging in expressive activities before the primary election concluded.  Handy also does not allege that defendants prevented him from performing his duties as a Commissioner.

Thus, Handy fails to provide facts establishing that defendants' actions were in retaliation against his prior speech. Although defendants placed certain limitations on Handy's access, those restrictions amounted to "de minimis deprivations of benefits and privileges" associated with his position as a Commissioner. Blair, 608 F.3d at 544.  Accordingly, because Handy has not alleged facts establishing a causal-link between his prior speech and defendants' subsequent conduct, his First Amendment retaliation claim fails at the pleading level.  Therefore, defendants' motion to dismiss this claim is granted.

    B.   <u>Due Process Claim Against the Individually Named Defendants</u>

The Fourteenth Amendment's protections encompass the right "to engage in any of the common occupations of life."  Hyland v. Wonder, 972 F.2d 1129, 1141 (9th Cir. 1992); see also Portman v. Cnty. of Santa Clara, 995 F.2d 898, 907 (9th Cir. 1993) (the liberty interest protected by the due process clause "encompasses an individual's freedom to work and earn a living").  The Ninth

Page 14 - OPINION AND ORDER

Circuit recognizes this right in the employment context where an individual's dismissal caused harm to their reputation and is serious enough "to stigmatize or otherwise burden the individual so that he is not able to take advantage of other employment opportunities." Bollow v. Fed. Reserve Bank of S.F., 650 F.2d 1093, 1100 (9th Cir. 1981) (internal quotations omitted); see also Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991) ("[c]harges that carry the stigma of moral turpitude may implicate a liberty interest"). However, to state a claim under 42 U.S.C. § 1983, the "plaintiff must allege [the] loss of a recognizable property or liberty interest in conjunction with the allegation of injury to reputation." Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir. 1991). This additional requirement is often referred to as the "stigma-plus" test. See Paul v. Davis, 424 U.S. 693, 701-02, 711 (1976).

The Court finds that Handy fails to articulate a protected liberty interest in the case at bar. Handy does not directly respond to defendants' Due Process argument; furthermore, Handy does not cite to, and this Court is not aware of, any case law that supports Handy's assertion that he has a protected liberty interest in his elected position as Commissioner or a protected right to run for reelection. While the there is no precedent addressing whether an elected official has a liberty interest in his or her position in this precise context, the Supreme Court and the Ninth Circuit hold that no such right exists in analogous circumstances. See Snowden v. Hughes, 321 U.S. 1, 7 (1944) (finding no protected interest in being nominated or elected to public office); N.A.A.C.P., L.A. Branch v. Jones, 131 F.3d 1317, 1324 (9th Cir.

Page 15 - OPINION AND ORDER

1997) ("[c]andidates do not have a fundamental right to run for public office"); D'Agostino v. Delgadillo, 111 Fed.Appx. 885, 886 (9th Cir. 2004) (a losing candidate in a state election "has no property interest in the elected position"); see also Emanuele v. Town of Greenville, 143 F.Supp.2d 325, 333 (S.D.N.Y. May 8, 2011) (political candidate has no property or liberty interest in being elected); Wallace v. Island Cnty., 2011 WL 6210633, *15 (W.D.Wash. Dec. 13, 2011) (same). Further, even if Handy could establish that his asserted liberty interests are protected, he fails to allege that defendants hindered his ability to run for reelection. In fact, it is undisputed that Handy was able to run for reelection but merely lost after the primary race ended on May 15, 2012. See Compl. ¶ 26.

Moreover, Handy presents no facts to support his assertion that defendants made statements of a stigmatizing nature. None of Handy's allegations include statements by defendants that depict Handy as being dishonest or immoral. Therefore, Handy's conclusory assertions cannot survive a motion to dismiss. As such, because Handy has not presented sufficient facts to establish a violation of his Due Process rights, defendants' motion to dismiss this claim is granted.

C. Civil Rights Violation Claim Against the County

Under 42 U.S.C. § 1983, liability of a local governing body arises when "action pursuant to official [policy or custom] of some nature caused a constitutional tort" and not on the basis of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "To establish liability, a plaintiff must [show] that he was deprived of a constitutional right and that the city

Page 16 - OPINION AND ORDER

had a policy, practice, or custom which amounted to deliberate indifference to the constitutional right and was the moving force behind the constitutional violation." Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) (citation and internal quotations omitted).

Here, Handy fails to allege any facts indicating that the County has such a policy or custom. Instead, the entirety of Handy's claim merely recites the formal elements outlined above: "[the] County allowed the behavior alleged herein to be taken by a final policy-maker; and/or has ratified the behavior alleged herein . . . evincing deliberate indifference to [Handy's] constitutional rights, sufficient to support a verdict that [the County's] policies, customs, or practices caused the violations of [his] civil rights." Compl. ¶¶ 65-68. Moreover, Handy does not identify which allegedly protected rights the County infringed upon via its policy or custom. Thus, even construing Handy's complaint broadly, the Court is unable to infer what actions of defendants' resulted in a deprivation of Handy's rights or were pursuant to the allegedly illegal policy or custom. As a result, the Court finds that Handy's claim fails at the pleading level and, therefore, defendants' motion to dismiss is granted.

    D.   State Law Claims

Dismissal of Handy's federal claims does not automatically deprive a district court of subject-matter jurisdiction over any supplemental state law claims. Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Rather, where a district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, "decline to exercise supplemental

Page 17 - OPINION AND ORDER

jurisdiction" over pendent state law claims. 28 U.S.C. § 1367(c)(3); see also Lacey, 693 F.3d at 940. Therefore, this Court declines to exercise supplemental jurisdiction over Handy's state law claims.

## CONCLUSION

Defendants' Motion to Dismiss (doc. 9) is GRANTED in regard to plaintiffs' federal claims. In addition, the Court declines to exercise supplemental jurisdiction over Handy's state law claims. Accordingly, this case is DISMISSED.

IT IS SO ORDERED.

Dated this 26 day of March 2013.

_____
Ann Aiken
United States District Judge