IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

ROB HANDY and BRIAN T. MCCALL,                    Case No. 6:12-cv-01548-AA
                                                  OPINION AND ORDER

       Plaintiffs,

   vs.

LANE COUNTY, LIANE RICHARDSON,
JAY BOZIEVICH, SIDNEY LEIKEN, and
FAYE STEWART,

       Defendants.

Marianne Dugan
Brian Michaels
Attorneys At Law
259 E. 5th Ave., Stes. 200-D & 300-D
Eugene, OR 97401
     Attorneys for plaintiffs

Stephen E. Dingle
Lane County Counsel
Lane County Office of Legal Counsel
125 E. 8th Ave.
Eugene, OR 97401
     Attorney for defendants

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Rob Handy, a former Lane County Commissioner, and plaintiff Brian McCall, one of Handy's former constituents, filed this civil rights action, alleging defendants Lane County, Liane Richardson, Jay Bozievich, Sidney Leiken, and Faye Stewart violated their civil rights in a series of actions taken around the time Handy was defeated in a 2012 primary election. In 2013, this Court dismissed the complaint for lack of subject matter jurisdiction and failure to state a claim. The Ninth Circuit affirmed, but remanded to afford plaintiffs the opportunity to file an amended complaint. Before the Court now is defendants' motion to dismiss the First Amended Complaint. For the reasons set forth below, the complaint is dismissed without prejudice.

## BACKGROUND

At the time of the events giving rise to this lawsuit, plaintiff Handy and defendants Bozievich, Leiken, and Stewart served as elected members of the five-member Lane County Board of Commissioners ("Board"). The fifth member of the Board, Pete Sorenson, is not a party to this lawsuit. Defendant Richardson worked as the County Administrator and, as such, was responsible for implementing countywide policy approved by the Board. Plaintiff McCall is a citizen living within Handy's then-district and was one of Handy's constituents at all relevant times. During his term of office, Handy had numerous disagreements with the individual defendants regarding his opinions and statements on both public and personal matters.

Handy ran for reelection in a primary race that was to be decided on May 15, 2012. On May 2, 2012, thirteen days before the primary election, Richardson received a complaint letter ("Letter"), alleging Handy violated certain campaign laws. Thereafter, Richardson received a public records request regarding the Letter from two media outlets. Bozievich, Leiken, and Stewart conferred

Page 2 - OPINION AND ORDER

privately about the Letter and decided an "emergency" meeting was necessary to discuss whether to release it. On May 3, 2012, at 9:00am, defendants and county counsel convened the "emergency" meeting. Handy, Sorenson, and the public were not told about the meeting until 7:40am the same morning. At the meeting, the Board voted to release the Letter, thereby electing not to apply the Public Records Act exemption for criminal investigations. The Letter was released the same day, leading to widespread coverage of the allegations therein.

Later in the day, Richardson changed the locks to Handy's office and adjusted Handy's access card settings so he could only enter the county building during business hours. Richardson also blocked Handy's access to his office computer and archived e-mails. Instead, Richardson set up a computer for Handy's use in a shared conference room. Richardson informed Handy the change in his access and privileges was necessary until the "various entities . . . looking into the allegations . . . no longer need access to your office and computer." First. Am. Compl. ¶ 27.

Also on May 3, 2012, the Oregon Department of Justice ("DOJ") began investigating the allegations in the Letter. On May 8, 2012, the DOJ emailed Richardson and county counsel stating it had not asked for Handy to be locked out his office and specifically taking "no position" on the County's actions limiting Handy's access to his office and computer. Handy did not learn about this email until a month and a half later, after he filed a public records lawsuit in state court. The DOJ eventually concluded there was insufficient evidence Handy had committed a crime under Oregon campaign finance laws.

On May 15, 2012, Handy lost the primary election. On May 23, 2012, Handy filed a public records lawsuit against the County in state court. On June 29, 2012, Handy filed a second lawsuit in state court, alleging the County, Leiken, Bozievich, and Stewart had violated the Oregon Public

Page 3 - OPINION AND ORDER

Meetings Act. At that point, county representatives informed Handy he had been locked out of his office due to his pending lawsuits against the County.

Despite his repeated requests for access to his office, Handy remained locked out until July 30, 2012. For the three-month period of the lockout, he was able to access the county building only during regular business hours, and he was unable to access his office. He was provided access to a computer in a conference room instead. Handy alleges the conference room, which was used by a number of other people, was "heavily scheduled," making it "virtually impossible to carry out his Commissioner duties there." First Am. Compl. ¶ 29. During the lockout period, Handy was unable to access archived emails and his contact list. He alleges this "made it impossible for him to continue with some of his work in progress." *Id.* ¶ 43. Finally, Handy alleges the lockout meant he "was unable to hold office hours for his constituents to come speak with him." *Id.* ¶ 44. McCall alleges he "attempted to visit Handy, as a constituent, during this period of time, and was unable to do so." *Id.* ¶ 45.

On June 30, 2012, Handy was given a key to his old office, but still could not retrieve his archived emails. In addition, for the remainder of his term in office, Handy's access card to the building remained set for business hours only, rather than the usual 24–hour access.

In August 2012, Handy and McCall filed this lawsuit in federal court, alleging violations of the First Amendment, Fourteenth Amendment, and Oregon Public Meetings Act. On March 26, 2013, this Court granted defendants' motion to dismiss. *Handy v. Lane Cnty.*, 937 F. Supp. 2d 1297, 1307 (D. Or. 2013) ("March 2013 Opinion and Order"). The March 2013 Opinion and Order first dismissed McCall's claims for lack of subject matter jurisdiction, holding McCall had failed to demonstrate he had either constitutional or prudential standing to sue. *Id.* at 1302-04. Turning to

Page 4 - OPINION AND ORDER

Handy's claims, this Court held Handy had failed to state a claim for violation of either his First or Fourteenth Amendment rights. *Id.* at 1304-06. Finally, this Court dismissed Handy's claims against the County for failure to state a claim, declined to exercise supplemental jurisdiction over Handy's state law claims, and dismissed the case. *Id.* at 1307.

Plaintiffs appealed. The Ninth Circuit affirmed the dismissal of plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim. *Handy v. Lane Cnty.*, 585 F. App'x 570, 570 (9th Cir. 2014). However, the Ninth Circuit vacated the judgment and remanded to permit plaintiffs to file an amended complaint.[1] *Id.* at 571.

The mandate from the Ninth Circuit issued on November 17, 2014. More than a year later, on December 10, 2015, plaintiffs filed the First Amended Complaint. Defendants then filed the instant motion to dismiss.

## STANDARDS

Where the court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed. R. Civ. P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The party who seeks to invoke the subject matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Similarly, where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels-Hall v.*

---

[1] The March 2013 Opinion and Order did not address leave to amend. The Ninth Circuit concluded the "ent[ry of] judgment soon after dismissal[] effectively preclud[ed] amendment." *Handy*, 585 F. App'x at 570.

*Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the [c]omplaint[.]" *Daniels-Hall*, 629 F.3d at 998.

## DISCUSSION

I.    *McCall's Claims*

The March 2013 Opinion and Order dismissed McCall's claims on the ground McCall lacked standing to sue, and the Ninth Circuit affirmed that determination. McCall's claims must again be dismissed unless new allegations in the First Amended Complaint establish he suffered (1) an "injury in fact" that is (2) "fairly traceable to the challenged action" of defendants and (3) likely to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (alterations normalized) (citations and quotation marks omitted). "[W]hen the plaintiff is not himself the object of [the] governmental action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* at 562. This is so because when "a plaintiff's asserted injury arises from the government's allegedly unlawful [action directed at] *someone else*," causation and redressability

"ordinarily hinge on the response of the [object of] the government action[.]" *Id.* (emphasis in original).

McCall faces this "substantially more difficult" task of establishing constitutional standing because defendants' challenged actions were all aimed at Handy, not McCall. *Id.* The First Amended Complaint contains a single new factual allegation regarding McCall: that he "attempted to visit Handy, as a constituent, during th[e] period [of the lockout], and was unable to do so." First Am. Compl. ¶ 44. This meets the injury in fact requirement, as it is an individual injury rather than a generalized grievance. *Lujan*, 504 U.S. at 575. But McCall has failed to establish causation in connection with this injury. Defendants' actions in locking Handy out of his office did not prevent McCall from meeting with Handy; they merely prevented McCall from meeting with Handy *in a particular location.* McCall's inability to meet with Handy during the lockout period stems not from defendants' action but from Handy's decision not to meet with constituents in any of a number of alternative locations. McCall thus lacks standing to sue because his injury is not fairly traceable to defendants' actions. For this reason and the reasons set forth in the March 2013 Opinion and Order, defendants' motion to dismiss McCall's claims is granted.

II.    *Handy's Claims*

A. *First Amendment*

To establish a First Amendment retaliation claim, a plaintiff must show that (1) he or she engaged in constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). The March 2013 Opinion and Order identified four

Page 7 - OPINION AND ORDER

deficiencies in Handy's First Amendment claim: the original complaint failed to (1) "cite to any political views, specific debates, or particular disagreements" that constituted prior protected speech; (2) allege facts establishing a nexus between that prior speech and defections' actions in limiting his access to his office, archived emails, and the County building; (3) allege defendants' actions "prevented [him] from voicing his opinions, making statements, or engaging in expressive activities" or "prevented him from performing his duties as a Commissioner"; and (4) explain how the limitations defendants imposed "amounted to [more than] de minimis deprivations of benefits and privileges associated with his position as a Commissioner." *Handy*, 937 F. Supp. 2d at 1305 (quotation marks and citation omitted).

The amended complaint remedies some of these deficiencies. Handy now references specific examples of protected speech, alleging he made public statements about the process for selecting County Administrator, how the County and counsel's office handled litigation in which Handy was a named defendant, how former county counsel handled the affairs of the County, and various county expenditures. First. Am. Compl. ¶ 13. These are paradigmatic examples of speech on political issues, and as such they are protected by the First Amendment. *See Nev. Comm'n on Ethics v. Carrigan*, 131 S. Ct. 2343, 2347 (2011) (acknowledging First Amendment protects elected official's statements on policy questions). Though it is a closer question, the amended complaint also adequately alleges a causal relationship between Handy's past speech and the release of the Letter and the lockout. *Cf. Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1155 (9th Cir. 1982) (to meet causation prong of prima facie retaliation case, plaintiff generally must only show adverse action following protected conduct of which defendant was aware).

Defendants counter they had a legitimate reason to restrict Handy's access to county equipment and facilities, citing the public records requests, allegations of misconduct in the Letter, DOJ investigation, and state-court lawsuits. In evaluating a motion to dismiss, however, the court is bound to "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013) (en banc) (quotation marks and citation omitted). Accordingly, at this stage, this Court cannot accept the existence of a plausible nonretaliatory explanation for defendants' conduct as conclusive proof retaliation was not a substantial or motivating factor in their actions. *See Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002) (explaining "mixed-motive" framework for First Amendment retaliation cases). Moreover, whether a proffered nonretaliatory justification is legitimate or pretextual boils down to a question of intent. Such questions ordinarily cannot be resolved at the summary judgment stage, much less at the motion to dismiss stage. *Gifford*, 685 F.2d at 1156.

Handy has nonetheless failed to state a claim for First Amendment retaliation because the alleged retaliatory action in this case would not chill a person of ordinary firmness from exercising First Amendment rights in the future. Handy alleges he was locked out of his office; denied 24-hour access to the county building and restricted to hours the building was open to the general public; and prevented from accessing his computer, including his archived email. These restrictions lasted for approximately three months. During that period, Handy was given access to a computer at a desk in a conference room that was "frequently used by other people" and was "heavily scheduled." First Am. Compl. ¶ 29. Handy alleges this made it "virtually impossible to carry out his Commissioner duties there." *Id.* He was "unable to hold office hours for his constituents to come and speak with him." *Id.* ¶ 43. He further alleges "[n]ot having access to his email and his files made it impossible

Page 9 - OPINION AND ORDER

for him to continue with some of his work in progress." *Id.* More broadly, he asserts the restrictions "made it much more difficult for [him] to carry out his elected duties, and seriously undermined his ability to do his elected job." *Id.*

Adverse actions are generally "'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010) (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). The "prototypical plaintiff" in a First Amendment retaliation case loses a job, is stripped of a business license, or is targeted by law enforcement. *Id.* It is true "denial of even a 'trivial' benefit" may give rise to a First Amendment claim for a public employee so long as "the aim is to punish protected speech." *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 977 (9th Cir. 2002) (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75-76 (1990)). But the more trivial the punishment, the less likely it is to amount to First Amendment retaliation because it is difficult to show a minor deprivation is "of a nature that would stifle someone from speaking out." *Blair*, 608 F.3d at 544.

When the plaintiff is an elected official and the defendants are his or her peers, minor punishments are particularly unlikely to rise to the level of a First Amendment violation because "more is fair in electoral politics than in other contexts." *Id.* In this unique setting, the adverse action generally must be quite severe to violate the plaintiff's First Amendment rights — for example, blocking the plaintiff "from taking office . . . on [a] trumped-up ground[,]" effectively "nullifying a popular vote." *Id.* at 545 n.4 (discussing *Bond v. Floyd*, 385 U.S. 116 (1966)).

The restrictions placed on plaintiff were the sort of "minor indignit[ies]" that do not give rise to a First Amendment retaliation claim. *Id.* at 544. Release of the Letter and plaintiff's three-month

Page 10 - OPINION AND ORDER

lockout, even if part of a game of "political hardball" rather than a legitimate investigation, would not chill an elected official of ordinary firmness from carrying out the duties of his office. *Id.* Plaintiff was not prevented from speaking out about or voting on issues. As explained above, he has not explained why he could not meet with constituents and carry out his duties somewhere other than in his county-provided office. The lockout and accompanying restrictions doubtless caused plaintiff substantial inconvenience, but that does not change the fact that they were "de minimis deprivations of benefits and privileges" falling short of a First Amendment violation. *Id.* Accordingly, defendants' motion to dismiss Handy's First Amendment claim is granted.

B. *Fourteenth Amendment*

The Fourteenth Amendment prevents governmental entities from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. The liberty interest protected by the Due Process Clause "encompasses an individual's freedom to work and earn a living." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 907 (9th Cir. 1993) (citation and quotation marks omitted). To state a claim governmental action deprived him or her of the right "to engage in any of the common occupations of life," a plaintiff must allege the government "t[ook] steps or ma[de] charges that so severely stigmatize[d] the employee that she cannot avail herself of other employment opportunities." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992). In addition, the plaintiff must identify the "the denial of a state-created property or liberty interest" in conjunction with the stigmatizing action. *Cooper v. Dupnik*, 924 F.2d 1520, 1532 n.22 (9th Cir. 1991). This dual requirement is known as the "stigma-plus" test. *Id.* at 1532.

The March 2013 Opinion and Order dismissed Handy's Fourteenth Amendment claim for two reasons. First, this Court found no authority to support Handy's novel assertion he had a

"protected liberty interest in his elected position as Commissioner or a protected right to run for reelection." *Handy*, 937 F. Supp. 2d at 1306. Second, in the initial complaint, Handy failed to allege defendants made any public statements of a stigmatizing nature. *Id.*

Handy has again failed to identify a "state-created liberty or property interest" as required for a stigma-plus due process claim. *Cooper*, 924 F.2d at 1532 n.22. The First Amended Complaint adequately alleges "stigma" traceable to at least one defendant by contending Stewart, at the May 3 meeting, stated Handy had "chosen to disregard the law and act inappropriately" in violation of "absolutely very clear" campaign finance standards.[2] First Am. Compl. ¶ 67. However, the "plus" — loss of Handy's position on the Board — happened because the *voters* did not reelect Handy. When courts have recognized stigma-plus claims for elected officials, the "plus" has taken the form of removal from office *by a governmental official*, not by popular vote. *See, e.g.*, *Velez v. Levy*, 401 F.3d 75, 90 (2d Cir. 2005) (elected school board member adequately stated stigma-plus claim by alleging fellow board members accused her of criminal behavior and the chancellor of the school district removed her from office as a result of those accusations). Because Handy has failed to allege he was deprived of a right or status recognized by state law, defendants' motion to dismiss his Fourteenth Amendment claim is granted.

C. *Municipal Liability*

Because only Handy's state law claims remain, his municipal liability claim must be dismissed. *See Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 960-61 (9th Cir. 2010)

---

[2] Because Handy has not identified a protected liberty or property right in connection with his due process claim, it is not necessary to address his assertion the other individual defendants violated his due process rights by failing to "take any steps to remove or reduce the public stigma" created by Stewart's statement or offer to hold "a name-clearing hearing." First Am. Compl. ¶ 69.

(affirming summary judgment in favor of government on *Monell* claim because "alleged insufficiency in training . . . relate[d] only to a possible state law violation" and not to any federal constitutional violation).

III.    *Leave to Amend*

In their response to the motion to dismiss, plaintiffs ask this Court to grant leave to amend the complaint in the event any of their claims are dismissed. Def.'s Resp. Mot. Dismiss 8. Although Federal Rule of Civil Procedure 15, which governs leave to amend, "should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

There is no evidence of bad faith here and plaintiffs have only amended their complaint once. Thus, these two factors weigh in favor of dismissal without prejudice. On the other side of the scale, undue delay weighs against leave to amend. In *Jackson*, the Ninth Circuit affirmed the district court's denial of leave to amend in part because "[a]ppellants informed the court of their intention to file an amended complaint in March 1987, in May 1987, and in February 1988, but they delayed offering their amended complaint until May 1988." 902 F.2d at 1388. The Ninth Circuit held even a seven-month delay, from October 1987 (when plaintiffs asserted they had fully analyzed all relevant facts) to May 1988, was "inexplicable and unjustified." *Id.* Here, plaintiffs waited more than a year to file an amended complaint and did not communicate with the Court at all in the

intervening months. I find this delay, explained only by plaintiffs' counsel's admission the case "end[ed] up on the back burner," unjustified. Def.'s Resp. Mot. Dismiss 2.

Defendants also assert they will be prejudiced if plaintiffs are given the opportunity to file a Second Amended Complaint. First, defendants argue they will be prejudiced because delay inherently increases the risk that witnesses' memories will fade and evidence will become stale. Second, defendants contend both they and the public have an interest in the expeditious resolution of this lawsuit, particularly in light of the fact that some of the named defendants are currently running for elected office. Although "[p]rejudice to the opposing party is the most important factor" to consider in considering whether to grant leave to amend, *Jackson*, 902 F.2d at 1387, these arguments are more appropriately considered as part of defendants' undue delay argument. *Compare id.* at 1388 (finding defendants would be prejudiced by the addition of new claims to the complaint because it would "require [defendants] to relitigate a portion of their state court action . . . on different theories") *with Islamic Rep. of Iran v. Boeing Co.*, 771 F.2d 1279, 1287 (9th Cir. 1985) ("Mere delay, by itself, is insufficient and does not raise an inference of prejudice.")

This leaves futility. Generally, "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Because there is no proposed Second Amended Complaint here, the question is whether "the complaint could . . . be saved by any amendment." *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003). In its remand order, the Ninth Circuit concluded "a review of the record does not

Page 14 - OPINION AND ORDER

reveal the complaint could not have been saved by amendment." *Handy*, 585 F. App'x at 570-71. At this stage, I decline to make a finding amendment would be futile.

Notwithstanding plaintiffs' unjustified thirteen-month delay in filing the First Amendment Complaint, their request for leave to amend the complaint for a second time is granted.[3]

IV.    *State Law Claims*

Dismissal of a plaintiff's federal claims does not automatically deprive a district court of subject matter jurisdiction over any supplemental state law claims. *Carlsbad Tech., Inc. v. HIF Bio., Inc.*, 556 U.S. 635, 639 (2009). Rather, where a district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, decline to exercise supplemental jurisdiction over pendent state law claims. 28 U.S.C. § 1367(c)(3); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (2012). Therefore, this Court declines to exercise supplemental jurisdiction over Handy's state law claims.

---

[3] Defendants also argue this action should be dismissed for lack of prosecution under Fed. R. Civ. P. 41(b). Dismissal under Rule 41(b) is a "harsh penalty and is to be imposed only in extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). The cases defendant cites in which the Ninth Circuit affirmed 41(b) dismissal all involved something more than mere delay. *See, e.g.*, *Pagtalunan v. Galaza*, 291 F.3d 639, 641 (9th Cir. 2002) (court "explicitly warned" petitioner missing the deadline would be construed as his consent to dismissal and petitioner filed to explain his failure to communicate with the court to request an extension); *Yourish v. Cal. Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999) (plaintiffs missed filing deadline after plaintiffs stipulated to dismissal in exchange for defendants supporting an extension). Here, although the delay was significant, defendants have not shown "plaintiff[s'] actions . . . threatened to interfere with the rightful decision of the case" such that the risk of prejudice outweighs the public policy favoring disposition of cases on the merits. *Pagtalunan*, 291 F.3d at 642-43. Dismissal for failure to prosecute is not justified at this time.

Page 15 - OPINION AND ORDER

## CONCLUSION

Defendants' motion to dismiss plaintiffs' First Amended Complaint (doc. 33) is GRANTED,

and plaintiffs' request for leave to amend is GRANTED.  Plaintiff's request for oral argument is

DENIED as unnecessary.  The complaint is DISMISSED without prejudice.

IT IS SO ORDERED.

Dated this 17th day of March 2016.


_____
Ann Aiken
United States District Judge