IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ROB HANDY and BRIAN T. MCCALL,                Case No. 6:12-cv-01548-AA
                                                        OPINION AND ORDER
      Plaintiffs,

    vs.

LANE COUNTY, LIANE RICHARDSON,
JAY BOZIEVICH, SIDNEY LEIKEN, and
FAYE STEWART,

      Defendants.

AIKEN, Judge:

    In this civil rights action, plaintiff Rob Handy, a former Lane County Commissioner, and plaintiff Brian McCall, one of Handy's former constituents, allege defendants violated their civil rights and the Oregon Public Meetings Act in a series of actions taken around the time Handy was defeated in a 2012 primary election. Before the Court now is defendants' motion to dismiss plaintiffs' Second Amended Complaint. For the reasons set forth below, the motion is granted in part and denied in part with respect to plaintiffs' federal claims. The Court stays consideration of plaintiffs' state law claims pending the submission of supplemental briefs as described in further detail in this opinion.

PAGE 1 - OPINION AND ORDER

## BACKGROUND

At the time of the events giving rise to this lawsuit, Handy was one of five elected members of the five-member Lane County Board of Commissioners ("Board"). Defendants in this action are Lane County ("the County"); three of Handy's fellow commissioners, Jay Bozievich, Sidney Leiken, and Faye Stewart; and County Administrator Liane Richardson. McCall was one of Handy's constituents and lived within Handy's district.

In May 2012, Handy was up for reelection. On May 2, thirteen days before the primary election, Richardson received a letter complaining Handy had violated certain campaign laws. The same day, Richardson received a public records request from two media outlets asking that the letter be released. Richardson told Bozievich, Leiken, and Stewart about the letter and the public records request. The three commissioners conferred and decided to meet at 9:00am the next day, May 3, to discuss whether to comply with the public records request. Handy, Pete Sorenson (the fifth member of the Board and not a party to this lawsuit), and the public were not informed about the meeting until 7:40am on May 3, one hour and twenty minutes before the meeting took place. At the meeting, the Board declined to apply the Public Records Act exemption for criminal investigations and voted to release the letter. The letter was released the same day, leading to widespread coverage of the allegations therein. The Oregon Department of Justice ("DOJ") promptly opened an investigation into the letter's allegations.

Later on May 3, Richardson changed the locks to Handy's office and adjusted Handy's access card settings so he could only enter the county building during business hours. Richardson also blocked Handy's access to his office computer and archived e-mails. Instead, Richardson set up a computer for Handy's use in a shared conference room. Richardson informed Handy the change in

his access and privileges was necessary until the "various entities . . . looking into the allegations . . .
no longer need access to your office and computer." Second Am. Compl. ¶ 28. On May 8, 2012,
the DOJ emailed Richardson and county counsel stating it had not asked for Handy to be locked out
his office and specifically taking "no position" on the County's actions limiting Handy's access to
his office and computer. *Id.* ¶ 29. Handy did not learn about this email until a month and a half
later, after he filed a public records lawsuit in state court. The DOJ eventually concluded there was
insufficient evidence Handy had committed a crime under Oregon campaign finance laws.

On May 15, 2012, Handy lost the primary election. On May 23, 2012, Handy filed a public
records lawsuit against the County in state court. On June 29, 2012, Handy filed a second lawsuit
in state court, alleging the County, Leiken, Bozievich, and Stewart had violated the Oregon Public
Meetings Act. At that point, county representatives informed Handy the lockout would continue due
to his pending lawsuits against the County.

Despite his repeated requests for access to his office, Handy remained locked out until July
30, 2012. Handy alleges the lockout and associated limitations transformed him from an easily
accessible Commissioner to one who was "almost completely inaccessible" to his constituents.
Second Am. Compl. ¶ 59. Specifically, Handy alleges:

- He was unable to continue his "open door" policy of meeting with constituents. That was particularly damaging to Handy because he had worked hard to establish the "open door" policy and he spent more time in his office than any of his fellow Commissioners. *Id.* ¶¶ 47-48.

- He was denied private space, forcing him to meet with his constituents in public. This deprived Handy and his constituents of the privacy and confidentiality other constituents and their Commissioners received. *Id.* ¶ 51.

PAGE 3 - OPINION AND ORDER

- The conference room purportedly provided as a substitute for his office space was not, in fact, available to him because it was used regularly by a County department as its conference room. *Id.* ¶ 52.

- He was unable to provide many of the constituent services he usually provided, such as referrals and information, because he was not permitted to access the referral lists and other handouts he kept in his office. *Id.* ¶ 53. He was also prevented from accessing his computer, which contained a number of important documents, including responses to constituent requests on which he was actively working. *Id.* ¶ 58. He never regained access to those documents. *Id.*

- His access to his County email was blocked, he lost access to voicemails and his phone, and his access to mail was intermittent, with some mail either lost or misplaced. *Id.* ¶ 24, 55, 60. Together, those limitations meant his constituents could not contact him "by any communication options." *Id.* ¶ 59.

On June 30, 2012, Handy was given a key to his old office, but still could not retrieve his archived emails. In addition, for the remainder of his term in office, Handy's access card to the building remained set for business hours only, rather than the usual twenty-four–hour access.

McCall twice attempted to meet with Handy during the lockout. On the first occasion, McCall called the Board's office to arrange a meeting with Handy. He was told that the County had no method to record or schedule constituent visits. McCall and his wife then went to Handy's office to take advantage of his "open door" policy. McCall hoped to discuss with Handy two issues that were important to McCall. When the McCalls inquired after Handy at the reception desk, they were told Handy was not in and asked if they would like to leave a note. McCall's wife left a short note. No one at the Board office explained that Handy had been excluded from his office or attempted to assist the McCalls in contacting Handy by other means.

In August 2012, Handy and McCall filed this lawsuit. In March 2013, this Court granted defendants' motion to dismiss the original complaint. *Handy v. Lane Cnty.*, 937 F. Supp. 2d 1297,

PAGE 4 - OPINION AND ORDER

1307 (D. Or. 2013) ("March 2013 Opinion"). On appeal, the Ninth Circuit affirmed the dismissal, but remanded to permit plaintiffs to amend the complaint. *Handy v. Lane Cnty.*, 585 F. App'x 570, 570-71 (9th Cir. 2014) (unpublished). In March 2016, this Court granted defendants' motion to dismiss the First Amended Complaint, but granted plaintiffs leave to replead. *Handy v. Lane Cnty.*, 2016 WL 1108951, *7 (D. Or. Mar. 17, 2016) ("March 2016 Opinion"). Defendants now move to dismiss plaintiffs' Second Amended Complaint.

## STANDARDS

Where the court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). A challenge to standing is appropriately raised pursuant to Fed. R. Civ. P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The party who seeks to invoke the subject matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Similarly, where the plaintiff "fail[s] to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). A court considering a motion to dismiss for failure to state a claim construes the complaint in favor of the plaintiff and takes the complaint's factual allegations as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[O]nce a claim has been stated adequately, it may be supported

by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

## DISCUSSION

I.    *McCall's Claims*

    A.    *Standing*

    At the motion to dismiss stage, a plaintiff must show he has standing to sue by alleging he suffered (1) an "injury in fact" that is (2) "fairly traceable to the challenged action" of defendants and (3) likely to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (alterations normalized) (citations and quotation marks omitted).  McCall's claims were originally dismissed because he had failed to "present a concrete and particularized injury . . . , rather than a general allegation that [his] representatives's right to his legislative role has been impeded." *Handy*, 937 F. Supp. 2d at 1303. The Ninth Circuit affirmed that reasoning on appeal, holding that McCall had not alleged an injury "that affected him 'in a personal and individual way' above and beyond Handy's constituents generally." *Handy*, 585 F. App'x at 570 (quoting *Lujan*, 504 U.S. at 560 n.1).  In the First Amended Complaint, McCall added an allegation that he "attempted to visit Handy, as a constituent, during th[e] period [of the lockout], and was unable to do so." First Am. Compl. ¶ 44.  This Court held that allegation met "the injury in fact requirement, as it is an individual injury rather than a generalized grievance." *Handy*, 2016 WL 1108951 at *3.  But McCall's claims were nonetheless dismissed a second time because he failed to show causation; McCall had alleged the lockout prevented McCall from meeting with Handy in a particular location, but did not explain why McCall could not meet with Handy elsewhere. *Id.*

In the Second Amended Complaint, McCall adequately alleges all three elements of standing. He asserts, now with more specificity, that he attempted to meet with his elected representative and was unable to do so. He also alleges that the lockout left Handy without a space in which to hold private constituent meetings. Those allegations satisfy the injury-in-fact requirement. Next, McCall alleges that defendants effectively cut off all methods of communicating with Handy, including email, telephone, and "drop in" visits, satisfying the causation requirement. Finally, redressability is satisfied because this Court could award damages to compensate McCall for his injuries. At least at this stage of the proceedings, McCall has standing to sue.

B.    *First and Fourteenth Amendment Claims*

McCall also has stated a claim for violation of his First and Fourteenth Amendment rights. The First Amendment's free speech and petition clauses protect the right to lobby elected officials. *McDonald v. Smith*, 472 U.S. 479, 482 (1985); *see also* Ronald J. Krotoszynski & Clint A. Carpenter, *The Return of Seditious Libel*, 55 U.C.L.A. L. Rev. 1239, 1246 (2008) ("At its core, the right of petition protects a personal right to bring complaints about public policy directly to officers of the government, up to and including the king himself."). The right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the bill of rights." *United Mieworkers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967). Although substantive rights under the petition clause have rarely been litigated, "the right to petition is cut from the same cloth" as other First Amendment rights. *McDonald*, 472 U.S. at 482.

Courts and commentators have recognized that the First Amendment right to petition is closely related to the right to a representative government. *See United States v. Hylton*, 710 F.2d 1106, 1107 (5th Cir. 1983) (stating that the petition right is "[i]mplicit in the concept of

PAGE 7 - OPINION AND ORDER

representative government" as well as "express in the provisions of the first amendment"). The right

to a representative government, in turn, is linked to rights under the Fourteenth Amendment's equal

protection clause. *See* Daniel P. Tokaji, *First Amendment Equal Protection: On Discretion,*

*Inequality, and Participation*, 101 Mich. L. Rev. 2409, 2499 (Jun. 2003) (noting that equal

protection case law on representative government "protect[s] against exclusion from the political

conversation" and bars the government from "selectively disenfranchising its citizens"). As the

Eighth Circuit has explained, "[a]s is the case with restrictions on candidacy, restrictions on an

elected official's ability to perform her duties implicate the interests of two distinct parties: the

individual's First Amendment associational rights and Fourteenth Amendment equal protection

rights, and the voters' rights to be meaningfully represented by their elected officials." *Peeper v.*

*Callaway Cnty. Ambulance Dist.*, 122 F.3d 619, 623 (8th Cir. 1997).

The Second Amended Complaint alleges that the lockout and associated limitations on

Handy's access privileges thwarted McCall's attempts, as a constituent, to meet with his elected

representative. That is a novel factual twist on a typical petition clause claim, which arises most

frequently when an individual is excluded from a public meeting of elected representatives. *See,*

*e.g.*, *Giddens v. Suisun City*, 2015 WL 692448, *8 (E.D. Cal. Feb. 18, 2015) (holding the plaintiff

stated a claim for violation of his right to petition the government by alleging defendants had

threatened him and ordered him to leave a City Council meeting on false pretenses); *cf. Walsh v.*

*Enge*, 154 F. Supp. 3d 1113, 1132 (D. Or. 2015) (holding a City ordinance prospectively excluding

from City Council meetings an individual who had been disruptive during past meetings violated that

individual's First Amendment rights, including his right to petition the government for redress of

grievances). Nonetheless, I conclude McCall has stated a claim for relief under the First

PAGE 8 - OPINION AND ORDER

Amendment. A vital component of the right to petition the government is the ability to communicate concerns to elected representatives. If McCall proves that defendants interfered with that communication without sufficient justification, he could prevail on his First Amendment claim. McCall's claim under the Fourteenth Amendment also may proceed. As noted, the right to meaningful representation by elected officials is rooted, at least in part, in the equal protection clause. Moreover, the Second Amended Complaint asserts that constituents of other Board members could easily communicate with their elected representatives during the time period in which McCall was unable to reach Handy.

Any burden on McCall's rights may have been justified by a legitimate government interest. But here, that issue cannot be resolved at the motion to dismiss stage because plaintiffs allege the government's asserted interest was pretextual. Defendants' motion to dismiss McCall's claims is denied.

II.    *Handy's Claims*

A.    *First Amendment Claim*

To establish a First Amendment retaliation claim, a plaintiff must show that (1) he or she engaged in constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). This Court held that the First Amended Complaint satisfied the first and third prongs of that test, a determination that is now law of the case and will not be revisited here. Nonetheless, Handy "failed to state a claim for First Amendment retaliation because the alleged retaliatory action in this case would not chill a person of ordinary firmness from

exercising First Amendment rights in the future." *Handy*, 2016 WL 1108951 at *4. Because "more is fair in electoral politics than in other contexts," the allegedly retaliatory actions in pleaded in the First Amended Complaint — release of the letter and a three-month lockout that excluded Handy from his office and computer — were "the sort of minor indignities that do not give rise to a First Amendment retaliation claim." *Id.* at *5 (citing *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010)) (quotation marks omitted and alterations normalized).

The Second Amended Complaint overcomes those deficiencies. It contains numerous new allegations underscoring the extent of the limitations defendants placed on Handy regarding access to communication systems, files, documents, and physical space. Those allegations arguably raise the severity of the alleged retaliation above the "de minimis" threshold, even taking into consideration the thicker skin plaintiffs must have in the arena of electoral politics. In *Blair*, the Ninth Circuit's holding rested, in part, on a determination that the plaintiff had "retained the full range of rights and prerogatives that came from having been publicly elected." 608 F.3d at 545. I can no longer conclude that was the case here. If Handy proves the allegations in the Second Amended Complaint, he will have created a triable issue of fact regarding whether the actions taken against him would deter an elected official of ordinary firmness from exercising his First Amendment right to speak out on issues. *See Bordheim v. Cry*, 584 F.3d 1262, 1274 (9th Cir. 2009) (whether retaliatory acts would deter a person of ordinary firmness from speaking is a question of fact for the jury). Defendants' motion to dismiss Handy's First Amendment claim is denied.

B.      *Fourteenth Amendment Claim*

I am barred from considering Handy's due process arguments by the law of the case doctrine. That doctrine ordinarily precludes a court from "reexamining an issue previously decided by the

same court, or a higher court, in the same case." *Minidoka Irrigation Dist. v. Dep't of Interior of U.S.*, 406 F.3d 567, 573 (9th Cir. 2005) (quotation marks omitted). The doctrine is subject to three exceptions, which permit a court to revisit an already-decided issue when "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Id.* (quotation marks omitted).

In the March 2016 Opinion, this Court squarely rejected Handy's argument that he stated a claim for a violation of his liberty interest in engaging in his chosen profession. *Handy*, 2016 WL 1108951 at *5. None of the new factual allegations in the Second Amended Complaint change the fact that Handy has failed to identify a state-created property or liberty interest of which he was deprived. Handy's Fourteenth Amendment claim must be dismissed for failure to state a claim.

Handy requested leave to amend the complaint if this Court dismisses any of his claims. I find no evidence of bad faith and decline to make a finding of futility. *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (listing factors courts must consider in assessing requests for leave to amend). However, plaintiff has been afforded two opportunities to amend the complaint and has been unable to state a due process claim. Moreover, plaintiffs waited more than a year before filing the First Amended Complaint. That undue delay weighs against giving Handy a fourth bite at the apple. Handy's Fourteenth Amendment claim is dismissed with prejudice.

III.    *Municipal Liability*

Local governmental units are subject to liability for violations of constitutional rights under section 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). That liability, however, is limited to holding municipalities responsible "for their *own* illegal acts[.]" *Id.* at 479 (emphasis in

PAGE 11 - OPINION AND ORDER

original).  There is no vicarious liability under section 1983.  *Id.*  To succeed in a claim against a municipality, a plaintiff must show that the governmental entity acted according to "official policy" when it violated a constitutional right.  *Id.*  Liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Id.* at 483.

The Second Amended Complaint alleges that the Board, the official decisionmaker for the County, knew that Handy was being locked out of his office yet "allowed that untenable situation to go on without review, analysis, or questioning," thereby "ratif[ying] the unlawful acts of the individual defendants."  Second Am. Compl. ¶ 100.  That allegation is sufficient to permit plaintiffs' surviving federal claims to proceed against the County.

IV.    *State Law Claims*

Plaintiffs also assert defendants violated provisions of the Oregon Public Meetings Act. Specifically, they allege (1) a quorum of the Commissioners conducted meetings in private for the purpose of deciding or deliberating toward decision on an issue, in violation of Or. Rev. Stat. § 192.630(2) and 192.670; (2) defendants failed to provide proper notice of the May 3 meeting in which they decided to release the letter, in violation of Or. Rev. Stat. § 192.640; and (3) defendants failed to take proper minutes of their meetings, in violation of Or. Rev. Stat. § 192.650.

After briefing on this motion was concluded, the Supreme Court of Oregon issued a decision in the Handy's state-court public meetings action. *See Handy v. Lane Cnty.*, — P.3d —, 2016 WL 6915892 (Or. Nov. 25, 2016).  That decision addressed two issues potentially relevant to proceedings in this case.  First, the court noted that "the Court of Appeals held that the decision whether to hold an emergency meeting was not subject to Oregon's public meetings law, and plaintiff has not

PAGE 12 - OPINION AND ORDER

challenged that decision on review." *Id.* at *12. Second, the court held that plaintiff had failed "to offer sufficient evidence from which a reasonable trier of fact could find that defendants met privately to decide or deliberate toward deciding whether to release the letter." *Id.*

It appears that the decision of the Supreme Court of Oregon may affect plaintiffs' claims in this lawsuit under principles of preclusion. The parties are directed to file supplemental briefs addressing the preclusive effect of the Supreme Court of Oregon's decision on the claims and issues in this case. The briefs are not to exceed ten pages and shall be filed within twenty-one days of the date of this opinion. Consideration of defendants' motion to dismiss plaintiffs' state law claims is stayed pending submission of the supplemental briefing.

## CONCLUSION

Defendants' motion to dismiss plaintiffs' Second Amended Complaint (doc. 41) is GRANTED IN PART and DENIED IN PART as follows. The motion is GRANTED with respect to Handy's Fourteenth Amendment due process claim, which is DISMISSED with prejudice. The motion is DENIED as to plaintiffs' other federal claims. The Court STAYS consideration of the parties' arguments regarding plaintiffs' state law claims pending the submission of supplemental briefing.

IT IS SO ORDERED.

Dated this 2nd day of January, 2017.

_____
Ann Aiken
United States District Judge

PAGE 13 - OPINION AND ORDER